# 25-0794-cv

## United States Court of Appeals

*for the*

## Second Circuit

SUE COSTELLO, Individual,

*Plaintiff-Appellant,*

– v. –

PARAMOUNT GLOBAL, INC.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

# BRIEF FOR APPELLEE PARAMOUNT GLOBAL

YEHUDAH L. BUCHWEITZ
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

-and-

CRYSTAL L. WEEKS
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7000

*Attorneys for Defendant-Appellee*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Appellee Paramount Global, by and through its undersigned counsel, states as follows:

Paramount Global is a wholly owned subsidiary of Paramount Skydance Corporation, a publicly traded company. Paramount Skydance Corporation is not aware, without further inquiry, of any publicly held corporation owning 10% or more of its total common stock, *i.e.*, Class A and Class B on a combined basis.

## TABLE OF CONTENTS


Introduction ..... 1

Statement of Issues ..... 2

Statement of the Case ..... 2

A. The Arbitration Agreement ..... 2

B. The Order Compelling Arbitration ..... 3

C. Plaintiff's Repeated Failure to Comply ..... 3

Jurisdiction ..... 7

Standard of Review ..... 7

Summary of the Argument ..... 8

Argument ..... 10

I. The District Court Properly Dismissed Plaintiff's Complaint for Failure to Prosecute ..... 10

A. The Duration of Plaintiff's Noncompliance Weighs in Favor of Dismissal ..... 12

B. Plaintiff Received Repeated Notice That Failing to Comply with Court Orders Would Lead to Dismissal ..... 13

C. Further Delay Would Prejudice CBS ..... 14

D. The District Court Properly Balanced its Need to Manage its Docket Against Plaintiff's Right to be Heard ..... 15

E. No Lesser Sanction Would be Effective ..... 17

II. Plaintiff Cannot Appeal the Arbitration Order ..... 18

III. Plaintiff's Remaining Arguments All Lack Merit ..... 21

Conclusion ..... 26

Certificate of Compliance ..... 27

Certificate of Service ..... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abarca v. Chapter 4 Corp.*,
2019 WL 13221420 (S.D.N.Y. Mar. 21, 2019) .................................. 17

*ACE Cap. Re Overseas Ltd. v. Cent. United Life Ins. Co.*,
307 F.3d 24 (2d Cir. 2002) .................................................................. 21

*Baptiste v. Sommers*,
768 F.3d 212 (2d Cir. 2014) (per curiam) ............................ 11, 12, 18

*Blair v. Moore Med., Inc.*,
2022 WL 1493743 (2d Cir. May 12, 2022) ........................................ 16

*Buon v. Spindler*,
65 F.4th 64 (2d Cir. 2023) .................................................................... 8

*Clowdis v. Colo. Hi-Tec. Moving & Storage*,
604 F. App'x 678 (10th Cir. 2015) ..................................................... 20

*Coinbase, Inc. v. Bielski*,
599 U.S. 736 (2023) ............................................................................ 19

*Daytona Tech. Repair, LLC v. MMI-CPR, LLC*,
2025 WL 332262 (N.D. Ohio Jan. 29, 2025) ...................................... 11

*Dhaliwal v. Mallinckrodt PLC*,
2020 WL 5236942 (S.D.N.Y. Sep. 2, 2020) ....................................... 12

*Dixon v. Blanckensee*,
994 F.3d 95 (2d Cir. 2021) .................................................................. 25

*United States ex rel. Drake v. Norden Sys., Inc.*,
375 F.3d 248 (2d Cir. 2004) ...................................................... 7, 11, 14

*Griggs v. S.G.E. Mgmt., L.L.C.*,
905 F.3d 835 (5th Cir. 2018) .............................................................. 20

*In re Int'l Bus. Machs. Corp.*,
618 F.2d 923 (2d Cir. 1980) .......... 22

*Int'l Bus. Machs. Corp. v. Edelstein*,
526 F.2d 37 (2d Cir. 1975) .......... 18

*King v. Garcia*,
2023 WL 3724982 (S.D.N.Y. May 30, 2023) .......... 14

*Lyell Theatre Corp. v. Loews Corp.*,
682 F.2d 37 (2d Cir. 1982) .......... 12

*Marquez v. Silver*,
96 F.4th 579 (2d Cir. 2024) .......... 19, 21

*Martens v. Thomann*,
273 F.3d 159 (2d Cir. 2001) .......... 10, 20

*McCollough v. Flying Horse, Inc.*,
2024 WL 4181781 (E.D. Tenn. Sep. 12, 2024) .......... 11

*Mitchell v. Lyons Pro. Servs., Inc.*,
708 F.3d 463 (2d Cir. 2013) .......... 15, 18

*Nat'l Auto Brokers Corp. v. Gen. Motors Corp.*,
572 F.2d 953 (2d Cir. 1978) .......... 24

*Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.*,
174 F.3d 87 (2d Cir. 1999) .......... 16

*Olivieri v. Stifel, Nicolaus & Co.*,
112 F.4th 74 (2d Cir. 2024) .......... 22

*Panuccio v. Weichert Workforce Mobility, Inc.*,
2025 WL 1194566 (S.D.N.Y. Apr. 22, 2025) .......... 15

*Pepe v. Kenev Inc.*,
2025 WL 370964 (S.D.N.Y. Feb. 3, 2025) .......... 14

*Petersen on Behalf of X.P. v. The Lang Sch.*,
2022 WL 540934 (S.D.N.Y. Feb. 23, 2022) .......... 14

*R&C Oilfield Servs. LLC v. Am. Wind Transp. Grp., LLC*,
45 F.4th 655 (3d Cir. 2022) .......... 20

*Rusza v. Rubenstein & Sendy Att'ys at L.*,
520 F.3d 176 (2d Cir. 2008) (per curiam) .......... *passim*

*Shannon v. Gen. Elec. Co.*,
186 F.3d 186 (2d Cir. 1999) .......... *passim*

*Smith v. Spizzirri*,
601 U.S. 472 (2024) .......... 10, 11, 19

*United States v. Alston*,
899 F.3d 135 (2d Cir. 2018) .......... 7

*United States v. Lovaglia*,
954 F.2d 811 (2d Cir. 1992) .......... 25

*United States v. Miller*,
626 F.3d 682 (2d Cir. 2010) .......... 14

*United States v. Schwartz*,
535 F.2d 160 (2d Cir. 1976) .......... 22

*Yadav v. Brookhaven Nat. Lab.*,
487 F. App'x 671 (2d Cir. 2012) .......... 12, 13, 17

**Statutes**

9 U.S.C. § 16(b) .......... 19

28 U.S.C. § 1291 .......... 7

28 U.S.C. § 1292(b) .......... 19

**Other Authorities**

Fed. R. Civ. P. 41(b) .......... *passim*

## INTRODUCTION

This appeal presents a single, straightforward question: whether the district court properly dismissed Plaintiff's case after she declined, for more than a year, to comply with the court's order to arbitrate her claims as her contract required. The answer is a simple yes, and everything else is just noise.

The district court accommodated Plaintiff at every turn—reminding Plaintiff repeatedly that her claims were subject to arbitration, granting her multiple opportunities to commence the process, and warning her in plain terms that continued defiance would result in dismissal. Plaintiff ignored those warnings. Confronted with Plaintiff's repeated noncompliance, the district court dismissed the case for failure to prosecute. That ruling was not harsh; it was the only reasonable course.

On appeal, Plaintiff does not contest that she failed to commence arbitration for more than a year, despite warnings of potential dismissal. Instead, she recycles conspiracy theories and attacks the order compelling arbitration—an order that is not reviewable by this Court under the Federal Arbitration Act ("FAA") in the case's current posture. None of Plaintiff's other arguments warrant reversal. The judgment should be affirmed.

## STATEMENT OF ISSUES

1. Whether the district court properly dismissed Plaintiff's Complaint with prejudice for failure to prosecute under Federal Rule of Civil Procedure 41(b) where Plaintiff repeatedly refused, without justification, to commence arbitration despite receiving numerous warnings that failure to do so would result in dismissal of her case.

## STATEMENT OF THE CASE

### A. The Arbitration Agreement

Each of Plaintiff's claims arise out of an agreement she entered with CBS Television Studios, a division of CBS Studios Inc. ("CBS"), providing that Plaintiff was to write a script for a television series (the "Agreement"). SA38–52. The Agreement incorporated CBS's standard General Provisions, which contain an arbitration clause requiring "any and all controversies, claims or disputes arising out of or related to [the] Agreement or the interpretation, performance, or breach thereof, including but not limited to, alleged violations of state and federal statutory or common law right or duties" to be "resolved" through "final and binding arbitration." SA52; SA9. Under the Agreement's fee arrangement, CBS paid Plaintiff $21,296.25 upon execution of the Agreement. SA47; *see also* SA12. The next payment under the Agreement, of $66,000, would have been due upon delivery of an initial draft of a script. SA47. But CBS never received

a script from Plaintiff, and accordingly, no further payments were ever due. *Id.*

Though unclear from the Complaint, Plaintiff appears to allege CBS did not actually intend to go forward with her television series, instead allegedly attempting to involve her in an internal investigation as a distraction. SA12–14; SA 28. Alleging CBS was "preventing . . . the enjoyment of her contract" in various ways, Plaintiff filed this lawsuit in February 2023. ECF No. 1.

### B. The Order Compelling Arbitration

Plaintiff's Complaint raised seven claims: breach of contract, breach of the covenant of good faith and fair dealing, tortious interference with a business relationship, constructive fraud, fraudulent inducement, malicious intent to cause emotional and financial distress, and discrimination on the basis of sex. SA30–34. Because each claim arose out of the Agreement, CBS moved to compel arbitration of all claims. ECF No. 21. The district court granted that request on February 1, 2024, and stayed the case pending arbitration. SA55–64.

### C. Plaintiff's Repeated Failure to Comply

Plaintiff immediately moved to reargue the motion to compel arbitration, SA65, which the district court denied on February 15, 2024, SA72. At that time, the district court issued the first warning to Plaintiff that the

case may be dismissed for failure to prosecute if no steps were taken toward commencing arbitration by June 3, 2024. *Id.* The court ordered the parties to file a joint letter on the status of arbitration every sixty days. *Id.*

When arbitration had not been initiated by the first joint status report, ECF No. 36, 37, the district court provided Plaintiff with a courtesy reminder of the June 3 deadline, this time specifically directing *Plaintiff*, as "the party that brought the claims," to take steps towards commencing arbitration. SA79. The court warned that "[i]f Plaintiff fails to take steps to commence arbitration by June 3, 2024, the case may be dismissed for failure to prosecute." *Id.* Plaintiff sought clarification of that order, and the district court further explained that if Plaintiff failed "to take steps to commence the arbitration by June 3," it would "issue an order asking Plaintiff why arbitration was not commenced and why the case should not be dismissed, and Plaintiff would have an opportunity to respond." SA84. The court encouraged Plaintiff to request a consultation with the New York Legal Assistance Group Legal Clinic for Pro Se Litigants and provided the clinic's contact information. *Id.* On April 15, 2024, the district court referred the matter to a Magistrate Judge. ECF No. 42.

On May 28, 2024, Plaintiff requested a sixty-day extension of her deadline to commence arbitration. ECF No. 48. The Magistrate Judge granted the request, pushing the deadline to July 1, 2024. ECF No. 49.

Several weeks before that deadline, the Magistrate Judge held an in-person conference with the parties. SA98–121. During that conference, Plaintiff repeatedly attempted to relitigate the district court's order compelling arbitration, and the Magistrate Judge repeatedly explained that this order was controlling and required Plaintiff to arbitrate. SA104–108; SA110–111; SA113–117. Nevertheless, at Plaintiff's request, the Magistrate Judge further extended Plaintiff's deadline to July 31, 2024. SA117–119; ECF No. 50. Just like the ones before it, that deadline came and went without Plaintiff's compliance. ECF No. 63.

When on August 2, 2024, Plaintiff had still not commenced arbitration, the Magistrate Judge once again reminded Plaintiff that the matter could be dismissed for failure to prosecute, and granted her "one final extension of time, until August 30, 2024." SA122. After Plaintiff again failed to commence arbitration by the deadline, ECF No. 68, the Magistrate Judge issued an order on October 9, 2024, directing Plaintiff to show cause why the case should not be dismissed under Federal Rule of Civil Procedure 41(b). SA123–124.

Plaintiff failed to demonstrate good cause. She claimed that the arbitration service, JAMS, refused to accept her case because it involved "evidence of criminal conduct." ECF No. 72. And although she asserted that she had attached correspondence from JAMS to substantiate that claim,

no such correspondence was included in her submission. *See* SA127; SA141.

On January 14, 2025, the Magistrate Judge issued a report recommending that Plaintiff's case be dismissed with prejudice for failure to prosecute (the "R&R"). SA125–134. After a thorough analysis, the Magistrate Judge concluded that all five factors governing dismissals under Rule 41(b) weighed in favor of dismissal. SA132–133. The Magistrate Judge specifically concluded that Plaintiff's repeated refusals to commence arbitration were unjustified, observing that because each of Plaintiff's claims is civil, it was unclear why JAMS would refuse to hear the case on the basis of "criminal conduct." SA131–132.

Plaintiff submitted multiple letters in response to the R&R, *see* ECF Nos. 77, 78, 80, 81, 82, 84, 85, which the district court construed as her objections, ECF Nos. 79, 86. CBS was given an opportunity to respond to the objections. SA134; ECF No. 83. On March 12, 2025, the district court adopted the R&R and overruled Plaintiff's objections, finding that they largely attempted to reargue the merits of her claims and the arbitration order. SA135–142.

Weighing the Rule 41(b) factors, the district court agreed that dismissal was warranted. SA137–142. The court found Plaintiff's prolonged fail-

ure to initiate arbitration—despite over a year of opportunity and five separate warnings—supported dismissal. SA138–139. The court also concluded that further delay would prejudice CBS, and Plaintiff had shown no justification for her inaction. SA139–140. It held the court's interest in docket management outweighed Plaintiff's interest in further opportunities to be heard, especially since arbitration remained available and the case otherwise appeared likely to remain stayed indefinitely. SA140. The court rejected Plaintiff's claim that she was unable to commence arbitration, finding her refusal unjustified and not supported by the evidence. SA140–141.

Consequently, the district court directed termination of the case and denied Plaintiff's *in forma pauperis* status after certifying that any appeal taken from the dismissal order "would not be taken in good faith." SA142. This appeal followed.

## JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1291 because the order dismissing Plaintiff's Complaint is a final decision of the district court.

## STANDARD OF REVIEW

This Court reviews dismissals for failure to prosecute "under the abuse of discretion standard." *United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004). A district court abuses its discretion

only by basing a decision on an error of law or a clearly erroneous factual finding, or by rendering a decision which cannot be located within the range of permissible decisions. *Id.*; *see also Buon v. Spindler*, 65 F.4th 64, 74 (2d Cir. 2023).

Dismissal for failure to prosecute under Rule 41(b) can be justified "[e]ven according [*pro se* plaintiffs] the special consideration [they are] afforded." *Rusza v. Rubenstein & Sendy Att'ys at L.*, 520 F.3d 176, 177 (2d Cir. 2008) (per curiam).

## SUMMARY OF THE ARGUMENT

The district court did not abuse its discretion when it dismissed Plaintiff's Complaint with prejudice for failure to prosecute, and each of Plaintiff's additional arguments lacks merit.

I. A district court is not required to leave a case open on its docket in perpetuity when a litigant fails to adhere to court orders. Here, the case was dismissed only after the district court thoroughly weighed the relevant factors. Specifically, the court found that the duration of Plaintiff's delay, Plaintiff's notice that dismissal was possible, the likelihood that CBS would be prejudiced by further delay, the court's interest in managing its docket, and the absence of a lesser sanction all weighed in favor of dismissal. SA138–141.

After a year of no progress in this case, repeated warnings that dismissal was possible, and failure to show cause why the case should not be dismissed, the district court finally dismissed Plaintiff's Complaint for failure to prosecute. Plaintiff had the opportunity to file many letters with the district court, attend conferences, file motions and objections, and receive repeated notices from the court on the requirement to comply with the order compelling arbitration. Documents filed for the first time on appeal show that Plaintiff even had the opportunity to ask questions to JAMS staff for guidance on commencing arbitration. Yet she did not commence arbitration, nor did she provide justification for her failure to participate in this case for the year that it stalled.

Plaintiff argues that the dismissal was improper because it was impossible for her to comply with the arbitration order. But there is no evidence in the record that it was impossible for Plaintiff to commence arbitration. Plaintiff had several opportunities to provide any such evidence but could not. Even on appeal, the JAMS correspondence Plaintiff attaches reveals that JAMS told her civil claims *can* be arbitrated. The lengthy delay by Plaintiff, multiple notices from the court that the case could be dismissed, prejudice to CBS due to the delay, right for the court to manage its docket, and absence of effective lesser sanctions all weigh in favor of dismissal with prejudice.

II. Plaintiff primarily takes issue with the district court's arbitration order, asserting that it was fraudulent, illegal, and impossible to comply with. But the arbitration order is not before this Court. Arbitration orders cannot be immediately appealed, and they do not merge with dismissals for failure to prosecute on appeal. In any event, the arbitration order was proper.

III. Plaintiff raises a litany of other grievances, including that the District Court Judge failed to recuse herself; the court failed to address Plaintiff's RICO and conspiracy claims (even though there were none in the Complaint); and that dismissal was retaliatory in violation of the First Amendment. Each lacks merit.

## ARGUMENT

### I. The District Court Properly Dismissed Plaintiff's Complaint for Failure to Prosecute

Under the FAA, district courts retain discretion to dismiss a case involving an arbitrable dispute if there is a reason to do so "unrelated to the fact that an issue in the case is subject to arbitration." *Smith v. Spizzirri*, 601 U.S. 472, 476 n.2 (2024). In other words, a court may not dismiss a case solely because its claims are subject to arbitration, but it may dismiss one for independent reasons. *Id.* Failure to prosecute is such a reason. *Martens v. Thomann*, 273 F.3d 159, 179 n.14 (2d Cir. 2001) ("[T]hose courts to have addressed the issue have held that a court which stays an action

pending arbitration nevertheless maintains jurisdiction to regulate the parties' conduct by issuing sanctions, including dismissal for failure to prosecute under Rule 41(b).").[1]

Rule 41(b) authorizes a district court to dismiss an action "[i]f the plaintiff fails to prosecute or to comply with . . . a court order." Fed. R. Civ. P. 41(b). This Court has set forth five factors when considering whether dismissal with prejudice under Rule 41(b) is appropriate: "(1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal." *Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014) (per curiam) (citation omitted); *see also Drake*, 375 F.3d at 254 (listing factors). While

---

[1] This remains true after *Smith*, which held that courts must grant applications to stay cases during arbitration, rather than dismiss. 601 U.S. at 478–79. *See Daytona Tech. Repair, LLC v. MMI-CPR*, 2025 WL 332262, at *1 n.1 (N.D. Ohio Jan. 29, 2025) ("[T]he Court is highly skeptical that *Smith* . . . implicitly stripped district courts of their authority to dismiss actions for failure to prosecute or failure to comply with a court's orders."); *McCollough v. Flying Horse, Inc.*, 2024 WL 4181781, at *2 (E.D. Tenn. Sep. 12, 2024) (staying case pending arbitration and warning that "[f]ailure to timely file the required reports will result in the dismissal of this action under Rule 41(b) for failure to comply with a Court Order").

no one factor is dispositive, *Baptiste*, 768 F.3d at 216, the district court correctly concluded that all five support dismissal here.

### A. The Duration of Plaintiff's Noncompliance Weighs in Favor of Dismissal

This Court has held that as little as a seven-month delay by a *pro se* plaintiff qualifies as a "significant duration" warranting dismissal. *Rusza*, 520 F.3d at 177–78 (dismissal justified where "proceedings ground to a halt for over seven months as a result of [plaintiff's] inaction"). Here, at the time the district court dismissed Plaintiff's case, she had failed to commence arbitration for *over a year*—and she has still not done so a year and a half later. More than enough time had passed without progress when the district court dismissed the case, and the court was not obligated to leave the case open on its docket for any longer. *See Yadav v. Brookhaven Nat. Lab.*, 487 F. App'x 671, 673 (2d Cir. 2012) (summary order) ("[W]e have noted that a delay of a 'matter of months' can potentially warrant dismissal.") (quoting *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 42–43 (2d Cir. 1982)); *Dhaliwal v. Mallinckrodt PLC*, 2020 WL 5236942, at *2 (S.D.N.Y. Sep. 2, 2020) (finding dismissal justified where *pro se* plaintiff failed to commence arbitration "nearly a year" after the court issued an order compelling arbitration). The court thus properly concluded that the delay "weighs in favor of dismissal." SA138.

### B. Plaintiff Received Repeated Notice That Failing to Comply with Court Orders Would Lead to Dismissal

The second factor also weighs in favor of dismissal. Plaintiff was repeatedly warned that failure to comply with the arbitration order would result in dismissal. SA139. The district court issued at least five warnings, including a detailed explanation of the procedural steps the court would take to enforce its order and an opportunity to show cause why the case should not be dismissed. SA72; SA79; SA83–84; SA122–124.

Those warnings were more than sufficient to put Plaintiff on notice that failing to commence arbitration would lead to dismissal of her case. *See Rusza*, 520 F.3d at 177 (district court did not abuse its discretion by dismissing plaintiff's complaint where plaintiff had been "notified that 'further delay will result in dismissal'"); *Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 194 (2d Cir. 1999) (plaintiff "received ample notice that further delays would result in dismissal of his case for failure to prosecute" where a court notice instructed plaintiff to explain "why the action should not be dismissed"); *Yadav*, 487 F. App'x at 673 (affirming dismissal for failure to prosecute where "the district court gave [Plaintiff] ample notice—no less than three verbal warnings—of its intent to dismiss [his] action" if he failed to comply with a court order).

### C. Further Delay Would Prejudice CBS

Further weighing in favor of dismissal, Plaintiff's delay was both "lengthy and inexcusable," and therefore, prejudice to CBS may be presumed. *Drake*, 375 F.3d at 256. As the district court correctly recognized, Plaintiff's delay was "inexcusable" given her disregard of court orders, which contravened the "well-established basic proposition that all orders and judgments of courts must be complied with promptly." SA139 (quoting *United States v. Miller*, 626 F.3d 682, 689 (2d Cir. 2010)); *see also Petersen on Behalf of X.P. v. The Lang Sch.*, 2022 WL 540934, at *2 (S.D.N.Y. Feb. 23, 2022) ("The delay here i[s] inexcusable: Plaintiff has not complied with the Court's directives and has not taken any steps to advance this matter despite multiple Orders directing him to do so.") (alteration in original) (citation omitted).

As discussed above, Plaintiff's delay was also lengthy. More than a year had passed between the order to arbitrate and the dismissal order. District courts in this Circuit regularly presume prejudice resulting from delays less extensive than this one. *See, e.g.*, *King v. Garcia*, 2023 WL 3724982, at *3 (S.D.N.Y. May 30, 2023) (presuming prejudice where "Plaintiff ha[d] not complied with the Court's directives and ha[d] not taken any steps to advance this matter for more than five months"); *Pepe v. Kenev Inc.*, 2025 WL 370964, at *2 (S.D.N.Y. Feb. 3, 2025) (presuming prejudice after "more than four months"). And delays of more than a year

extend "well beyond the amount of time many courts in this circuit have permitted for *pro se* litigants." *Panuccio v. Weichert Workforce Mobility, Inc.*, 2025 WL 1194566, at *3 (S.D.N.Y. Apr. 22, 2025) (Report and Recommendation).

Plaintiff does not argue that her delay has not caused CBS prejudice, because she cannot. The facts alleged are now more than *seven years old*. CBS allegedly offered to negotiate the script deal in December 2017, SA21, and the Agreement is dated June 2018, SA40. If the court had not dismissed the case, the delay appeared likely to be indefinite. As this case's history shows, "future delays would continue to waste the time and resources of adversary parties." *Mitchell v. Lyons Pro. Servs., Inc.*, 708 F.3d 463, 468 (2d Cir. 2013).

### D. The District Court Properly Balanced its Need to Manage its Docket Against Plaintiff's Right to be Heard

The district court also correctly balanced its interest in managing its docket with Plaintiff's interest in receiving a fair chance to be heard. SA140. Plaintiff "received sufficient notice and a fair opportunity to be heard before the case was dismissed." *Shannon*, 186 F.3d at 195. She opposed CBS's motion to compel arbitration, ECF No. 23, and the district court thoroughly considered her arguments before compelling arbitration, SA59–64. More importantly, the district court's order compelling arbitration did not foreclose Plaintiff's opportunity to be heard on the merits of

her claims; it only required her to present her claims to an arbitrator, which she has deliberately chosen not to do.[2]

The court further gave Plaintiff multiple extensions of time to comply with its orders and to commence arbitration, repeatedly warning her of the consequences that would follow if she failed to do so. Having done so, the court was not obligated to leave the matter stayed on its docket in perpetuity. *See Rusza*, 520 F.3d at 177–78 (by "delaying dismissal for twenty days and thereby affording [plaintiff] ample time to inform the Court that he stood ready to press his claims," the district court "carefully balanced" "the need to alleviate court calendar congestion . . . against plaintiff's right

---

[2] For these same reasons, there is no merit to Plaintiff's contention that dismissal of her case denied her due process. *See* Br. at 8, 20, 24–25. "[D]ue process requires that courts provide notice and an opportunity to be heard before imposing any kind of sanctions." *Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.*, 174 F.3d 87, 92 (2d Cir. 1999) (citation omitted); *see also Blair v. Moore Med., Inc.*, 2022 WL 1493743, at *3–4 (2d Cir. May 12, 2022) (affirming dismissal with prejudice for failure to prosecute under Rule 41(b) and concluding the dismissal satisfied due process after "an opportunity to be heard" and warnings of potential dismissal). Here, Plaintiff availed herself of the opportunity to challenge CBS's motion to compel arbitration, was heard at two conferences with the district court, and received numerous warnings that failure to commence arbitration would result in dismissal. After the R&R was entered, Plaintiff filed *seven* letters related to the recommendation of dismissal and demanded the court treat all her letters as objections, which the court obliged. ECF Nos. 77–84, 85–86. Altogether, Plaintiff filed *thirty-three* letters with the district court, none of which provided a justification for choosing not to initiate arbitration. She was not denied due process.

for an opportunity for a day in court"). In short, Plaintiff "failed to provide any [adequate] explanation for" her failure to commence arbitration, and "failed to represent to the court that [s]he was prepared to [arbitrate] those claims diligently." *Shannon*, 186 F.3d at 195.

### E. No Lesser Sanction Would be Effective

Finally, the district court concluded no sanction less drastic than dismissal was likely to persuade Plaintiff to comply because she had "already been informed that [her] failure to participate [in the process] may lead to the dismissal of [her] action," but she had refused to do so anyway, "without any justification." SA140–141 (quoting *Abarca v. Chapter 4 Corp.*, 2019 WL 13221420, at *2 (S.D.N.Y. Mar. 21, 2019)). "[B]ased on [Plaintiff's] continued disregard for the district court's orders, the district court properly found that no less drastic sanctions, short of dismissal, would be effective." *Yadav*, 487 F. App'x at 673; *see also Ruzsa*, 520 F.3d at 178 ("[I]n light of [plaintiff's] failure to respond to the notice threatening dismissal, it is equally unclear that a 'lesser sanction' would have proved effective in this case.").

Nothing was stopping Plaintiff from commencing arbitration. Although Plaintiff has finally attached what appears to be email correspondence with JAMS employees, A26-27,[3] it indicates only the obvious fact that

[3] This information is "outside the record and cannot be considered by [this Court] on appeal." *United States v. Alston*, 899 F.3d 135, 139 n.1 (2d Cir.

JAMS handles civil rather than criminal matters. The JAMS representative appears to be responding to a generalized, hypothetical inquiry from Plaintiff about "the JAMS procedure if an arbitrator discovers that Crimes have been committed." A26. Nowhere does this exchange indicate that JAMS informed Plaintiff that *this case* is not arbitrable. In fact, it shows that JAMS explained to Plaintiff that it can handle civil matters, like this case.

* * *

Because the *Baptiste* factors overwhelmingly supported dismissal, the district court did not abuse its discretion in terminating the case with prejudice. *See Mitchell*, 708 F.3d at 467.

## II. Plaintiff Cannot Appeal the Arbitration Order

Through this appeal, Plaintiff again seeks to challenge the order compelling arbitration of her claims. She cannot do so. That order was not a final, appealable decision, and it did not "merge" with the dismissal order. *Shannon*, 186 F.3d at 192–93. And even if the issue were properly before the Court, it would fail on the merits.

---

2018); *see also Int'l Bus. Machs. Corp. v. Edelstein*, 526 F.2d 37, 45 (2d Cir. 1975) ("[A]bsent extraordinary circumstances, federal appellate courts will not consider rulings or evidence which are not part of the trial record.").

The FAA makes clear that an "order compelling arbitration is not immediately appealable." *Smith*, 601 U.S. at 478; *see also* 9 U.S.C. § 16(b). This limitation on appeal reflects a deliberate choice by Congress to "provide[] for immediate interlocutory appeals of orders *denying*—but not of orders *granting*—motions to compel arbitration." *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023).

Instead, the FAA permits appeals of such orders only through the narrow path of discretionary interlocutory review afforded by 28 U.S.C. § 1292(b). *See* 9 U.S.C. § 16(b). When the district court compelled arbitration, Plaintiff did not pursue this path. She was thus required to comply with the district court's order and commence arbitration.

Often, when orders are not appealable on an interlocutory basis, they can be raised in an appeal of a final judgment through the merger doctrine. *Shannon*, 186 F.3d at 192. But that is generally *not* the case when the final judgment is a dismissal for failure to prosecute. *Id.*; *Marquez v. Silver*, 96 F.4th 579, 582–83 (2d Cir. 2024) (holding interlocutory orders do not "merge" into a final judgment "when a final judgment of dismissal is imposed as a sanction for litigation misconduct, such as a failure to prosecute"). This includes where the interlocutory order compels arbitration. Otherwise, a plaintiff could simply refuse to comply with an arbitration

order, receive a dismissal for failure to prosecute, and then merge the arbitration order with the dismissal to effectively achieve an unsanctioned interlocutory appeal of the arbitration order. That would "give the individual plaintiff[] an unfair advantage [since she would] otherwise have been unable to appeal the question of arbitrability." *Martens*, 273 F.3d at 183 (refusing to review order compelling arbitration while hearing appeal of order dismissing claims for failure to prosecute because "[t]his Court has . . . condemned allowing unappealable interlocutory issues to hitch a free ride into the Court of Appeals on an order dismissing a case for failure to prosecute").[4]

[4] Other courts agree that "[w]here the final order is one dismissing the case under Rule 41(b) for failure to prosecute . . . interlocutory orders [compelling arbitration] typically do not merge." *R&C Oilfield Servs. LLC v. Am. Wind Transp. Grp., LLC*, 45 F.4th 655, 661 (3d Cir. 2022) ("[T]he order compelling arbitration does not merge into the final order . . . . The only order we may review is the District Court's Rule 41(b) order."); *see also, e.g.*, *Griggs v. S.G.E. Mgmt., L.L.C.*, 905 F.3d 835, 844–45 & n.54 (5th Cir. 2018) (affirming Rule 41(b) dismissal with prejudice for failure to commence arbitration and disallowing appeal of order compelling arbitration because plaintiff "should not be permitted, through recalcitrance, to obtain the review of the arbitration clause that he was expressly denied in the district court, a review that Congress has foreclosed under the Federal Arbitration Act"); *Clowdis v. Colo. Hi-Tec. Moving & Storage*, 604 F. App'x 678, 681–82 (10th Cir. 2015) (declining to review order compelling arbitration where appellant "made no timely attempts to comply" with the order, "did not request certification for an interlocutory appeal of that order," and "failed to comply with a court order").

This Court thus lacks jurisdiction to consider Plaintiff's argument that the order compelling arbitration was wrongly decided. *See Marquez*, 96 F.4th at 583 & n.1; *Shannon*, 186 F.3d at 193.

Regardless, the arbitration order was proper. The court determined arbitrability by considering: "(1) whether the parties agreed to arbitrate disputes at all; and (2) whether the dispute at issue comes within the scope of the arbitration agreement." *ACE Cap. Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002). The Agreement contained an arbitration provision, and the Complaint itself recognized the Agreement was valid and enforceable. SA9; SA30. The arbitration provision covers "any and all controversies, claims or disputes arising out of or related to [the] Agreement." SA9. All claims in the Complaint arise out of or relate to the Agreement, as the district court found. SA58. Thus, even if the issue were properly before this court, the arbitration order should be affirmed.

## III. Plaintiff's Remaining Arguments All Lack Merit

Finally, Plaintiff's various allegations related to judicial bias lack merit. Many of these assertions are baldly conclusory. *See* Br. at 10. Many more are simply veiled attempts to relitigate the district court's decisions. *See id.* at 18 (contending district court "show[ed] bias by allowing [CBS's] illegal arbitration motion"); *id.* at 23 (asserting district court displayed bias by "ignoring substantial evidence of the Defendants' fraud, breach of

contract, and intellectual property theft," when in reality these claims must be adjudicated at arbitration). But "[a]dverse rulings, standing alone, do not establish judicial bias or prejudice, nor create a reasonable question of judicial impartiality." *United States v. Schwartz*, 535 F.2d 160, 165 (2d Cir. 1976) (citation omitted); *see also In re Int'l Bus. Machs. Corp.*, 618 F.2d 923, 929 (2d Cir. 1980) ("Judicial independence cannot be subservient to a statistical study of the calls [a judge] has made during the contest.") (alteration in original).[5]

Among the adverse rulings Plaintiff takes issue with is the court's denial of Plaintiff's motion to re-argue the motion to compel arbitration, where the court explained that the Ending Forced Arbitration Act ("EFAA"), which allows parties to invalidate arbitration agreements that preclude claims of sexual assault or sexual harassment, does not apply retroactively to the claims brought in this case.[6] SA72. On appeal, Plaintiff

[5] Plaintiff also challenges the district court's denial of *in forma pauperis* status for this appeal, arguing the court's ruling that an appeal would not be taken in good faith was based on the court's alleged prejudice against Plaintiff. Br. at 9, 20, 23. CBS takes no position on the denial.

[6] That holding was correct because, "[b]y its terms, the EFAA applies 'with respect to any dispute or claim that arises or accrues on or after [its] date of enactment . . .'—*i.e.*, March 3, 2022." *Olivieri v. Stifel, Nicolaus & Co.*, 112 F.4th 74, 84 (2d Cir. 2024) (quoting Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 (2022)). Here, all of the events potentially relevant to the claims against CBS occurred before that date. Beyond that, the court also found that Plaintiff had failed to adequately plead a sexual harassment or sexual assault claim. SA63 ("The Complaint here—including Count VII, the sex

argues the court cited the EFAA "to confuse the Plaintiff and the appeals court," Br. at 10, but Plaintiff herself raised the statute before the district court and argued her gender discrimination claim is exempt from arbitration, SA68. She also argues the district court's "complicity" in granting CBS's motions "sexually harassed, degraded and tried to minimize the Plaintiff['s] claims," Br. at 27, but there is no evidence of this in the record.

Similarly, nothing in the record indicates the district court took or declined to take any action because of Plaintiff's First Amendment-protected speech. Nor could the district court have failed to address her "RICO and conspiracy claims," Br. at 8, when her Complaint contained no such claims. Plaintiff's assertions are conclusory and unsubstantiated, and provide no basis for reversing the district court's order dismissing the Complaint.

Plaintiff also claims the district court harbored bias against her because of Plaintiff's *pro se* status. The record reflects otherwise. The district court thoroughly explained the case's procedural status, as well as the reason the Court was required to resolve CBS's motion to compel arbitration before considering Plaintiff's claims on the merits. *See* SA93–95. In so doing, the court went out of its way to "reassure" Plaintiff that "it [was not] held against [her] that [she] [was] not a lawyer or that [she] d[id] not have

---

discrimination claim—does not assert a claim, or facts that would support a claim, for either theory of sexual harassment or for sexual assault.").

a lawyer in the lawsuit." SA95. And rather than expressing *any* unwillingness to consider Plaintiff's objections, the district court explained how Plaintiff could properly present her arguments against CBS's motion to compel arbitration and assured her the court would consider those arguments. SA95–96.[7]

Finally, Plaintiff is wrong to suggest that the District Court Judge's prior employment at a law firm created any conflict of interest, much less mandated recusal.[8] Plaintiff contends the District Court Judge was biased because she was previously employed as a partner at the law firm that conducted an internal investigation for CBS, and Plaintiff was contacted by that law firm in connection with that investigation. Br. at 14, 26–27; SA24. But "[t]he prior representation of a party by a judge or h[er] firm with regard to a matter unrelated to litigation before h[er] does not automatically require recusal." *Nat'l Auto Brokers Corp. v. Gen. Motors Corp.*, 572 F.2d 953, 958 (2d Cir. 1978). Plaintiff never makes clear how the past

[7] The Magistrate Judge showed similar careful regard for Plaintiff's *pro se* status. *See* SA100 (explaining that she set a conference because she "typically like[s] to have cases with pro se plaintiffs and defendants in court so [they] have an opportunity to talk to [her], [and] tell [her] anything [they]'d like to raise").

[8] For the same reasons argued in this brief, the Court should deny Plaintiff's Motion for Recusal of District Court Judge, filed on September 15, 2025. Dkt. No. 27. The Court has since issued a Notice of Defective Filing. Dkt. No. 28. The motion raises the same issues included in Plaintiff's opening brief as to alleged judicial bias.

employment is in any way connected with the case at hand. This is unsurprising, as Plaintiff alleges the investigation took place in 2018, *see* SA23–24, over five years after the District Court Judge was appointed to the bench, a fact this Court can judicially notice. *Dixon v. Blanckensee*, 994 F.3d 95, 102 (2d Cir. 2021). Plaintiff raises only "remote, contingent, indirect [and] speculative interests" such that "disqualification [was] not required." *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992).[9]

Put simply, the district court did not refuse to consider any of Plaintiff's arguments for any improper purpose. To the contrary, it heard, acknowledged, and ruled on every argument she properly presented. The only arguments it did not hear were the ones it was prohibited from resolving before arbitration, which Plaintiff repeatedly refused to commence despite the district court giving her numerous chances to do so.

---

[9] Plaintiff's allegations of "transcript editing" are also meritless. Br. at 8. They pertain at most to a minor typographical error in a transcript of a 2023 teleconference: a lone reference to "Rona Barrett" rather than "Ronan Farrow." *See* SA89. Plaintiff argued to the district court that the transcript was "doctored" or the court reporter was "very incompetent" because they "wrote Rona Barrett instead of Ronan Farrow." SA109–110. The district court accepted Plaintiff's correction. *See* SA110.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's order dismissing Plaintiff's complaint with prejudice.

Respectfully submitted,

*/s/ Yehudah L. Buchweitz*

Yehudah L. Buchweitz
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000
Yehudah.Buchweitz@weil.com

Crystal L. Weeks
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7000
Crystal.Weeks@weil.com

September 19, 2025

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record certifies pursuant to Fed. R. App. P. 32(g) that the Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the Brief exempted by Fed. R. App. P. 32(f), this document contains 5,953 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Century Schoolbook font in 14 point size.

*/s/ Yehudah L. Buchweitz*

Yehudah L. Buchweitz
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000
Yehudah.Buchweitz@weil.com

Crystal L. Weeks
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7000
Crystal.Weeks@weil.com

September 19, 2025

| | | | |
|---|---|---|---|
| STATE OF NEW YORK | ) | | **AFFIDAVIT OF SERVICE** |
| | ) | ss.: | **BY OVERNIGHT EXPRESS** |
| COUNTY OF NEW YORK | ) | | **MAIL** |

I, Tyrone Heath, 2179 Washington Avenue, Apt. 19, Bronx, New York 10457, being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age and resides at the address shown above or at

**On September 19, 2025**

deponent served the within: **Brief for Appellee Paramount Global**

**upon:**

Sue Costello
*Appellant Pro Se*
120 Quincy Shore Drive
Apartment 4
Qunicy, MA 02171

the address(es) designated by said attorney(s) for that purpose by depositing **1** true copy(ies) of same, enclosed in a postpaid properly addressed wrapper in a Post Office Official Overnight Express Mail Depository, under the exclusive custody and care of the United States Postal Service, within the State of New York.

**Sworn to before me on September 19, 2025**

Mariana Braylovskiy

**MARIANA BRAYLOVSKIY**
Notary Public State of New York
No. 01BR6004935
Qualified in Richmond County
Commission Expires March 30, 2026

T. Heath

**Job# 384606**